# Josiah S. Ziegler's Appeal, and Abraham S. Ziegler's Appeal.

"Commissions" are given to an executor or administrator as a compensation for labor or responsibility, and should be limited by the actual labor or responsibility. Where the value of the estate was about $95,672.78, but a portion of it was real estate and other portions of it required no care or labor from the executors, either in collection or management, an auditor's report reducing the claim for executors' commissions from $4,154.12 to $2,220.35 was confirmed.

(Decided May 3, 1886.)

Appeals from a decree of the Orphans' Court of Montgomery County making distribution of a decedent's estate. Affirmed.

Cited in Taylor's Estate, holding that 5 per cent will not be allowed as commissions for administering large estates in the absence of special circumstances, 3 Pa. Dist. R. 691, 692.

The history and facts of the case, as well as the points of law involved, fully appear in the following report of the auditor, Henry B. Garber:

The decedent here, Abraham O. Ziegler, died on the 7th day of May, 1880, leaving surviving him a widow and thirteen children, namely: Josiah, Abraham, George, Benjamin, William, Valentine, Augustus, Nathaniel, Sarah Ann married to Nathaniel Kehs, Amanda married to Harry Zearfoss, Angeline married to Elias K. Kulp, Catharine married to Amos R. Rosenberger, and Mary Jane married to Jacob Shatz. His last will and testament was admitted to probate June 3, 1880, and letters testamentary granted to Josiah S. Ziegler and Abraham S. Ziegler. The first account of the executors was filed June 2, 1881; it was excepted to by Catharine Rosenberger, Angeline Kulp, and Amanda Zearfoss, heirs of the estate.

William F. Solly, Esq. was appointed an auditor to pass upon the exceptions and make distribution of the balance found due the estate. He reported a distribution, but at the request of all the parties in interest refrained from passing, either upon the exceptions to the account, or upon certain claims and demands of heirs against the estate which were before him for adjustment. At that time the bulk of the estate was charged to the executors, and the heirs were anxious to have it distributed without delay, which was the reason for adopting the course pursued. When the remaining small portion of the estate should be collected, and the executors had filed a second account, all questions that had arisen were, by this agreement, to be adjudicated by an auditor, whose report might then be final.

By the direction of this court, a citation having been issued, the executors filed a second account on the 21st of December, 1883, showing a balance due the estate of $2,489.58. Exceptions to this account were filed by Amos R. Rosenberger, administrator of Catharine Rosenberger (said Catharine Rosenberger having died on the 13th of June, 1883, intestate and without issue, leaving to survive her a husband, the said administrator), Angeline Kulp, and Amanda Zearfoss; and the exceptions to the first account, not passed upon as has been stated, were at the same time renewed.

On the 13th of March, 1884, your auditor was appointed to pass upon the exceptions, to restate the accounts if necessary, and

to make distribution of whatever balance he found due the estate.

Five exceptions were taken to the accounts here in question, of which the first, second, and third have been relinquished. The fourth and fifth have been maintained with great energy before your auditor; and the questions thus raised for him to pass upon greatly increase the importance and responsibility of his present duties; he will endeavor to proceed with care and circumspection.

The fourth exception relates to the amount of commission charged by these executors, and the allegation is that it is excessive. The fifth exception relates to certain credits claimed for traveling expenses, including hotel bills, which were incurred by the executors in attending to the management of the estate; these are objected to upon the ground that they are not proper credits in law to be allowed an executor. As far as these two exceptions are identical in their nature, referring to the compensation to be allowed these executors, the auditor proposes to view them together.

A careful examination of the first account and first auditor's report shows that, at the time of filing that report, the sum total of all receipts and expenditures, of all disbursements made by the executors, and the balance charged against them, was $95,-672.78; and in the first account credit was taken for the sum of $4,154.12, as commissions due them as executors. But on a considerable part of the estate, i. e., on the sum of $21,661.07, it is claimed no commissions whatever are chargeable, it being composed of the proceeds of real estate ($4,130), of the value of real estate taken by heirs at the appraisement ($10,755.68), of certain charges in the family book of the decedent ($3,035.50), and of certain securities taken *in specie* by six of the heirs ($3,739.-89).

Two questions are now presented: What are commissions? How are commissions to be ascertained?

The auditor has examined very many authorities, and the same general principle, defining the meaning of the term "commissions" as applied to an executor or trustee, runs through all,—that commissions are given as a compensation for labor and responsibility.

Chief Justice GIBSON declared this to be the doctrine in *Re* Harland, 5 Rawle, 323, where, in speaking of this matter, he says that, though compensation is "usually awarded in the form of commission, the rate is not determinable by any established prac-

tice or rule, being graduated to the responsibility incurred, the amount of the estate, and the sum of the labor expended."

This brings up the second question,—how commissions are to be ascertained,—and answers it at the same time; leaving only the difficulty of determining just what the labor and responsibility were in the particular case in question which is now before your auditor.

These principles are very elaborately defined by Chief Justice TILGHMAN in the case of Pusey v. Clemson, 9 Serg. & R. 204, which with Stevenson's Estate, 4 Whart. 102, and Walker's Estate, 9 Serg. & R. 223, constitute the leading cases upon these points.

In Pusey v. Clemson, TILGHMAN, Ch. J., says: "An executor should receive a compensation adequate to his care and trouble, besides a liberal allowance for all necessary expenses, but it would be debasing the sanctity of the trust to consider it as an office of profit. . . . The common opinion and understanding of this country has fixed upon 5 per cent as a reasonable allowance. But to this rule there must be exceptions. There are estates where the total amount is small, and that, too, collected in driblets; in such, 5 per cent would be insufficient. On the contrary, there are others where, the total being very large and made up of sums collected and paid away in large masses, 5 per cent would be too much."

What, in this view of the law and under the circumstances of the particular case now before your auditor, is a proper compensation to the accountants for the responsibility incurred and the sum of the labor expended?

In order that the ground of the auditor's determination of this inquiry may be clearly and entirely understood, it becomes necessary to detail some of the facts elicited by his investigation of the nature of the duties these accountants were called upon to perform, and the extent of the services they rendered.

At the time of filing the first auditor's report, as above stated, the estate, which consisted chiefly of stocks, bonds, and mortgages, amounted to $95,672.78; and the executors had taken credit in their first account for $4,154.12, as commissions on personal estate. (As to the commission charged on real estate, it is proper here to say there is no dispute before the auditor.) Credits are also taken by the executors for various expenses incurred, amounting in the aggregate to about $738; and these ex-

penses were nearly all of a personal character, being for traveling, for hotel bills, and for clerk hire.

How did the money come into the hands of the executors? With what trouble? And in what amounts?

The cash on hand at the time of the decedent's death amounted to $9,560.19; about three fifths of this was in bank, and the remaining two fifths at the home of the decedent.

By sale of negotiable securities, the sum of $30,136.86 was realized; the sale occupied but a single afternoon, and the expense of holding it was paid by the estate.

The sum of $1,162.48 was received as dividends.

Ten mortgages yielded the sum of $14,873.97; and from two other mortgages $1,557 was realized. Nine of these securities were converted into cash by John J. Corson, of Norristown, who was paid for his services, this being one of the items of credit claimed by the executors for expenses incurred. One of the mortgages was taken by one of the accountants, Abraham S. Ziegler, as a portion of his distributed share of the estate. Another was collected by process of law, and the costs charged to the estate; and the last of the lot to be mentioned was collected with more than an ordinary amount of trouble from the terre-tenants' estate, after an orphans' court sale for the payment of debts.

Six judgments produced $10,001.55, and eight judgments the sum of $5,676.23.

About $7,000 was sums of interest and small claims, notes, and book accounts, which formed the most troublesome part of the work of gathering in the assets of the estate. This work was mainly done by Wm. F. Hallman, a business man of the neighborhood where the decedent had lived during his lifetime, in which locality many of these debtors were to be found. He was paid $200 for his services, which is another of the items of credit claimed for expenses incurred.

The items thus detailed constituted the bulk of the estate, about $74,000; almost half of this sum was collected at one time at the sale of stocks and bonds.

In the light of all the facts bearing upon this branch of the case, the auditor is of opinion that there was no extraordinary amount of trouble imposed upon these executors for which they would be entitled to a compensation such as they have claimed,

amounting to about 6 per cent on the amount which actually passed through their hands.

There were lawsuits, and the general management of the estate involved considerable labor; but the trouble has fallen principally upon those whom the executors employed to do the work, and whose services were paid for by the estate. Eminent counsel was employed to guide the executors in the path marked out for them by the law, and to ease them of much of the burden of their labors. He received $1,000 as his reward; and moreover the executors have had all their expenses paid over and above their commissions. Some of these expenses are excepted to, forming the subject of exception fifth; but your auditor is of opinion that, under all the circumstances, they should be allowed also, more especially as the credits claimed for expenses incurred are considered by the auditor in forming his judgment of what is a proper compensation to the accountants for their labors expended in behalf of this estate. Therefore the items of credit objected to in exception fifth are allowed the accountants. The accountants have charged commissions on the entire amount of the estate as represented in the first account, and this the auditor finds to have been improper, for the reason that the sum of $21,662.07 is not the subject of commissions. This sum is made up of the following items: $10,755.68 was the value of the real estate taken by heirs (clearly no commission can be charged upon that as an item of the personal estate); $3,035.50 was the amount of charges in the "family book" of the decedent (the executors had no responsibility connected with these items, and only the insignificant labor of properly entering them upon their accounts); $4,130 was the proceeds of the sale of real estate; and $3,739.89 represents the value of securities taken by heirs *in specie*. Here, as there was neither labor nor responsibility to the accountant, no commission can be charged, and the auditor cites, as authority for this, McCauseland's Appeal, 38 Pa. 466.

Therefore the auditor finds the proper basis of commissions in the first accounts to be the sum of $74,011.71, being that part of the assets of the estate actually administered by these executors; and under all the circumstances of the case your auditor is of opinion that 3 per cent upon this amount would be a proper and sufficient compensation to the accountants for their responsibility incurred and the sum of labor expended. The credit

claimed, therefore, of $4,154.12 is refused; the sum of $2,220.-
35 is allowed, and the accountants are surcharged with the dif-
ference, being the sum of $1,933.77.

By the agreement already mentioned, between the first auditor
in this estate and the parties in interest, a number of claims
against the estate presented by several of the heirs were undis-
posed of; and it now becomes the duty of the present auditor
to pass upon these.

Abraham S. Ziegler and Josiah S. Ziegler were in the drover's
business with their father, the decedent, who, at the time of his
death, owed them certain amounts as a balance of the shares of
the profit of the business during a period of a little more than a
year prior to the time of his death.

The claim of Abraham is clearly shown to be correct, and it is
therefore allowed, being the sum of $200. The claim of Josiah,
however, is surrounded with more difficulties. The decedent kept
a very careful account of his affairs, and had sent a statement to
Josiah not long before his death, which statement is in evidence
before the auditor, together with the original accounts them-
selves. These accounts seem, in the understanding of the au-
ditor, to show a balance due Josiah of $385; but the claimant
alleges that the sum of $417 is due him, which may be the cor-
rect amount coming to him; but the auditor has no information
on the subject other than that already mentioned, and must be
governed by it. The sum, therefore, of $385 is awarded Josiah
S. Ziegler as the amount due him from the estate by reason of
the partnership accounts between himself and the decedent.

It appears to the auditor that an item of interest, the sum of
$40, was due Abraham S. Ziegler, but the credit was omitted
upon the account, he never receiving the money; this is now al-
lowed by the present auditor in the distribution hereinafter
made. The sum of $37.50 is also allowed the accountants, as
a credit in favor of Benjamin S. Ziegler, being the excess of in-
terest due from him and charged against the executors.

Jacob A. Strassburger, Esq., counsel for Mrs. Kehs, a legatee,
appeared before the auditor and presented a claim for interest
upon the legacy of $500 bequeathed his client by the last will
and testatment of this decedent, and setting forth the fact that
the legacy had not been paid, as shown by the first auditor's re-
port, for more than two years after the death of the testator.
This the auditor finds to be the fact; but he also discovers some

reason for the delay, in the fact that much of this time was con-
sumed in the general delay connected with the settlement of the
estate, the inconvenience of which has been borne by all the heirs
and legatees; and to discriminate in favor of the present claim-
ant, so that she alone shall be compensated for whatever annoy-
ance this delay may have occasioned her, seems in the opinion
of the auditor to be rather an invidious distinction and one
which should not *ex æquo et bono* prevail in this instance.

The claim, therefore, of interest upon the legacy of Mrs.
Kehs is refused.

The executors are allowed credit for the sum of $58 paid to
Jacob Hillegas, of Reading, Pennsylvania, after the second
account was filed, for the arrears of taxes and costs on certain
property situated in Berks and Lebanon counties, which had
been sold for taxes, but recovered by the executors. It may be
proper here to mention that the Kinegrove property, a piece of
land lying in Berks, Lebanon, and Schuylkill counties, is still
the subject of litigation in the courts of Schuylkill county. The
executors are also allowed credit for the sum of $29.65, expenses
incurred after the filing of the second account; but they are sur-
charged with the sum of $60.10, as being that portion of their
expenses incurred in answering citations of this court and for
which credit was taken in the second account. With this ex-
ception, the credits claimed in the second account are allowed.

The claim of $5 for advertising, presented by A. Kneule &
Son, is allowed.

George N. Corson, Esq., counsel for the executors, asks the
auditor to allow him the sum of $100, as compensation for serv-
ices rendered the estate since the filing of the first auditor's re-
port. This is objected to by the counsel for the exceptants, who
claim that the allowance to the executors of $1,000 in the first
account for counsel fees was not only sufficient, but liberal,
and that nothing more ought to be allowed.

The auditor finds that the services rendered by counsel during
the time for which the additional compensation is asked were
more for the personal benefit of the executors themselves than
for the estate, and he is therefore of opinion that the expenses
should not be charged to the estate, which has already been rath-
er burdened by the executors with sums paid by them to agents,
clerks, and others called in to assist in doing their work. In the
discharge of his duty to the estate, the auditor therefore feels

obliged to refuse any further allowance to the executors for counsel fees.

In the distribution which the auditor is about to make, the share of the estate belonging to Catharine Rosenberger, who is now deceased, is distributed to her administrator, Amos R. Rosenberger, for the reason that at the time of the death of the said Catharine Rosenberger, the estate had already vested in her and was personal property. That the accounts of these executors had not been settled alone withheld absolute possession.

Exceptions were filed to this report by the executors, which were overruled by the court, and the report confirmed; whereupon the executors took separate appeals.

*George N. Corson* for appellants.

*Louis M. Childs* and *Aaron S. Swartz* for appellees.

PER CURIAM:

These appeals are from the same decree and were argued together.

The main questions are those of fact only. The auditor passed upon them correctly, as shown by his able report confirmed by the court, and on that report the decree is affirmed.

Decree affirmed and appeals dismissed at the costs of the respective appellants therein.